# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KAIA KHAMISI,                                    Case No. 1:20-cv-286
     Petitioner,

                  Black, J.
     vs.                                         Litkovitz, M.J.

SHERIFF JIM NEIL,                                **REPORT AND**
     Respondent.                                 **RECOMMENDATION**

Petitioner, recently discharged from community control, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 while on judicial release. (Doc. 1). Petitioner was convicted of tampering with records, theft, and unauthorized use of property (Doc. 27-2, at PageID 2331), and on June 29, 2018, she was sentenced to a total aggregate sentence of one year in the Ohio Department of Corrections (*id.*).[1] On July 17, 2018, petitioner filed a Motion for Judicial Release. (Doc. 27-3, at PageID 2334). On August 30, 2018, the trial court granted petitioner judicial release, with special conditions. (Doc. 27-5, at PageID 2336). The trial court has since terminated petitioner's community control as successful. (Doc. 27-6, at PageID 2337).

In her § 2254 petition, petitioner asserts claims pertaining to her state-court criminal trial and convictions, as well as challenges to the constitutionality of her community-release conditions. (Doc. 1). For the reasons stated below, petitioner's claims pertaining to her state-court trial and convictions should be denied with prejudice and her claims regarding her community-release conditions should be dismissed without prejudice as moot.

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals[2] set forth the following set of facts leading to petitioner's

---

[1] The theft and unauthorized-use-of-property counts merged for purposes of sentencing. (Doc. 27-2, at PageID 2331).

[2] The Ohio Court of Appeals consolidated the appeals of petitioner and codefendants Ayinde Khamisi, Jelani Khamisi, and Kimberly Khamisi (Case Nos. C-180405, C-180424, C-180425, C-180426, C-180433, and C-180434).

convictions and sentence:[3]

{¶2} Evidence presented at a jury trial showed that the Khamisis had engaged in schemes to steal real property from its rightful owners by filing fraudulent documents. The Khamisis justified their actions by claiming that the properties were abandoned and that they were in the process of establishing ownership through adverse possession.

### A. 3610 Washington Avenue

{¶3} Property located at 3610 Washington Avenue was the former site of the Zion Nursing Care Center. Dr. William Poole was the last remaining member of the board of directors of the nursing home and was attempting to sell the property. Dr. Poole had been devoted to the nursing home and had taken numerous actions to keep it open. He had taken a mortgage on the property in 2008, which was still valid at the time of trial.

{¶4} When Dr. Poole discovered "squatters" on the property, he called an attorney, Michael Gray. According to Gray, Dr. Poole "forgot to file a statement of continuation with the secretary of state" which caused the organization, Zion Nursing Care Center, to go "inactive." Gray discovered that the Hamilton County auditor showed an entity that Dr. Poole did not recognize as the owner of the property. Prior to trial, Dr. Poole passed away. But both his son and Gray testified that although the nursing home was closed and the building was vacant, the property had never been abandoned.

{¶5} The Khamisis created an entity with a name similar to and using the same address as the Zion Nursing Care Center by filing paperwork with the secretary of state. Those documents were signed by Kimberly, Ayinde, and Jelani. Jelani was named as the statutory agent. They filed additional documents, including a quit-claim deed, in the Hamilton County recorder's office that purported to transfer ownership of the property to other entities they had created. They also filed liens on the property. A representative of the Ohio attorney general's office testified that the Khamisis never registered these alleged charitable entities with the attorney general's office.

---

(*See* Doc. 22-2, at PageID 2266-67). Kimberly Khamisi and Ayinde Khamisi also filed habeas actions in this Court, which have been administratively stayed to allow those petitioners an opportunity to exhaust state remedies pertaining to claims concerning the conditions of their judicial release. *See Kimberly Khamisi v. Sheriff Jim Neil*, No. 1:20-cv-00285 (S.D. Ohio) (Doc. 33); *Ayinde Khamisi v. Sheriff Jim Neil*, No. 1:20-cv-00287 (S.D. Ohio) (Doc. 37).

[3]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner generally asserts that "the opinions of law given by the First District Appeals Court . . . contained false allegations that are contrary to actual evidence presented in the transcripts and that have been disputed and disproven[.]" (Doc. 24, at PageID 2309). However, she has failed to demonstrate that the Ohio Court of Appeals made an unreasonable determinization of any particular fact. Accordingly, the Ohio Court of Appeals' factual findings quoted herein are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶6} Detective Cynthia Alexander of the Cincinnati Police Department began investigating the Khamisis. She discovered several organizations that the Khamisis used in an attempt to gain control of the property at 3610 Washington Avenue.

{¶7} Kimberly filed a quiet-title action against "Zion Nursing Home, Inc." and "Zion Care Center, Inc." alleging that she had rightful possession of the property. The trial court in that case determined that Kimberly and her associated entities had no interest in the property and ordered the Hamilton County recorder's office to strike the quit-claim deed.

### B. 215 Mitchell Avenue

{¶8} Property at 215 Mitchell Avenue was owned by Ruby Red Services, LLC, a business incorporated by Melissa Meade. Meade later died in a car accident, and the house was vacant. Visio Mortgage Services held a mortgage on the property and began foreclosure proceedings. Claiming the property was abandoned, Jelani occupied the property. Subsequently, he and Kimberly filed multiple documents asserting an interest in the property, including a quit-claim deed. Several of the documents were filed after a court had refused to let them intervene in the foreclosure proceedings.

### C. 453 Sheffield Road

{¶9} The Anderson family owned property located at 453 Sheffield Road. Marsha Anderson testified that it was her parents' house, in which she had been raised. When her mother passed away, she left the property to Marsha and her siblings. Marsha moved out of the home in 2010, leaving it vacant, but continued to make mortgage payments on the home.

{¶10} Claiming the property was abandoned, Jelani occupied the property. In 2017, he filed a quiet-title action naming all the Anderson siblings as the defendants. A notice about the lawsuit was sent to Marsha's brother, Michael, who was deceased, at the Sheffield Avenue address. Jelani's complaint was dismissed when he failed to appear for trial.

{¶11} Marsha did not know about the action until Detective Alexander notified her about it. She testified that the property was not abandoned and that the quiet-title action was hurtful because the property had belonged to her parents, and she and her sister had taken care of their parents there.

{¶12} When he filed the quiet-title action, Jelani also filed an affidavit of indigency, in which he claimed had no income. In reality, he was employed by Stepping Stones, a nonprofit agency. He earned $18,979 in 2015, $22,591 in 2016, and $22,574 in 2017.

3

### D. 533 Glenwood Avenue

{¶13} Melissa Sherrod owned the property located at 533 Glenwood Avenue. Melissa's husband, Shareef Sherrod, testified that he was a real estate broker and investor who bought and rehabbed vacant properties, mostly single-family homes. The properties were put in his wife's name because it was easier for her to get financing, but he was the one who operated the business. He and his wife purchased the property in 2011 with the intent to renovate it and then rent it. He had contractors come out to look at the property for bids. Shereef made sure that the grass was cut every two to three weeks. He secured the property with a lockbox, sealed the windows, and had a neighbor watch out for trespassers.

{¶14} Ayinde occupied the property, and filed a quiet-title action naming Melissa as a defendant, in which he contended that he had an interest in the property. He also filed an affidavit of indigency. Ayinde's complaint was eventually dismissed for want of prosecution.

{¶15} The Sherrods had no notice of the action. They only learned of it when Detective Alexander contacted them. Shareef hired an attorney and paid her $500. He testified that he never gave anyone permission to take the property, and he had not abandoned it. He eventually sold the property and received the proceeds.

### E. 4945 Paddock Road

{¶16} Terrence Davis owned property located at 4945 Paddock Road. Davis owned a construction company and bought the property to remodel either as a daycare or "living units." The property was vacant when he bought it. He sealed it with a steel door that could not be entered.

{¶17} Davis had not yet started working on the property, but roofing material had been delivered and was sitting on the roof, when he saw one man and two women walking about the property and looking in the windows. Subsequently, he began the process of cleaning out the property and putting on a new roof.

{¶18} Kaia filed a quiet-title action, naming Davis as a defendant, along with an affidavit of indigency. He received notice of the action in his post-office box. Davis hired an attorney and filed an answer. His attorney made some phone calls and learned of the police's investigation into similar transactions. He testified that no one had his consent to come onto the property and that it was not abandoned. Kaia's complaint was eventually dismissed for want of prosecution.

### F. 200 Clinton Springs

{¶19} Brenda Willis owned property located at 200 Clinton Springs, which used to be her parents' house. On January 6, 2017, Kimberly filed a quiet-title action

4

naming as defendants Brenda and her husband, Charles Willis, although only Brenda's name was on the deed. Kimberly also filed an affidavit of indigency.

{¶20} Brenda stated that her siblings were living in the house until January 2018, and that none of the claims in Kimberly's complaint were true. She and her husband both filed answers, after which Kimberly dismissed her complaint. Brenda also stated that the property was not abandoned, and she had never given anyone permission to enter the property.

### G. 3944 Vine Street

{¶21} Kimberly filed a quiet-title action for property located at 3944 Vine Street, along with an affidavit of indigency. She claimed that the property was abandoned, and she was the possessor of the property. Anchor Holdings, LLC, was the property's owner. The quiet-title action was dismissed because Kimberly never obtained service on Anchor Holdings. Detective Alexander was unable to locate a representative for the company.

### H. 1595 Summit Avenue

{¶22} Michael West incorporated 4 Kennedy, LLC, a real estate business, to make money to pay for his daughter's college tuition. He bought property at 1595 Summit Road in 2015 and began renovations. Kimberly filed a quiet-title action alleging that the property was abandoned and that she had entered the property and claimed title to it.

{¶23} West did not find out about the action until Detective Alexander contacted his wife. He stated that he had not abandoned the property and that he believed that "somebody was trying to steal [his] property." The quiet-title action was dismissed when Kimberly failed to show up for court. Detective Alexander stated that at that time, Kimberly was aware that the Cincinnati Police Department was investigating the Khamisis.

### I.    10508 Toulon Drive

{¶24} James and Imogene Bronson had owned property at 10508 Toulon Drive. The Bronsons passed away, and the survivor identified in the deed was Michelle Reed. Wells Fargo Bank had initiated a foreclosure proceeding. Kimberly filed a quiet-title action against the Bronsons, Reed, and Wells Fargo, along with an affidavit of indigency. She claimed that the property was abandoned and that she was in possession. She also claimed that Wells Fargo did not have a valid mortgage. The case was dismissed for want of prosecution.

(Doc. 22-2, at PageID 2267-73).

## II.     PROCEDURAL HISTORY

### Trial Court Proceedings

On November 8, 2017, the Hamilton County, Ohio grand jury returned a twenty-one-count indictment against petitioner and other members of her family.  (Doc. 22-1 at PageID 1946-58).  In the indictment, petitioner was charged with one count each of tampering with records, theft, and unauthorized use of property.  (Doc. 22-1, at PageID 1954-55 (Counts Sixteen through Eighteen)).  The charges against petitioner concerned the property belonging to Terrance Davis, located at 4945 Paddock Road.  (Doc. 22-1, at PageID 1955; *see also* Doc. 22-1, at PageID 1969).  A Bill of Particulars was filed on December 27, 2021.  (Doc. 22-1 at PageID 1965-71).

On June 29, 2018, following a jury trial, petitioner was convicted on all three counts against her and was sentenced to a total aggregate prison sentence of one year in the Ohio Department of Corrections.  (Doc. 27-2 at PageID 2331-33; *see also* Doc. 22-1, at PageID 1836-40).

### Direct Appeal

On July 24, 2018, petitioner filed a pro se notice of appeal to the Ohio Court of Appeals. (*See* Doc. 27-1, at PageID 2326).  Petitioner raised the following four assignments of error in her appellate brief, as amended:

1.  The trial court abused its discretion by creating a fatal variance between the grand jury's indictment, and the bill of particulars and evidence, and committed structural error.

2.  The trial court abused its discretion and committed structural error by denying Defendant-Appellant's right to self-represent.

3.  The trial court abused its discretion and committed structural error by denying Defendant-Appellant's right to an impartial judge.

6

4. The trial court abused its discretion and committed structural error by denying Defendant-Appellant's right to a jury of his peers, a public trial, and a fair trial.

(Doc. 27-7 at PageID 2338-40). On April 15, 2020, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 22-2, at PageID 2267-89).

## Ohio Supreme Court

On June 2, 2020, petitioner filed a pro se notice of appeal to the Ohio Supreme Court.[4] In her memorandum in support of jurisdiction, petitioner raised the following two propositions of law:

1. The state has no authority to bring felony charges through direct indictment for factual circumstances not articulated on the indictment but described on the bill of particulars as a constitutionally protected right and/or a misdemeanor, and state officials in the process of judicial procedure, have no authority to by-pass my constitutionally protected rights to have probable cause, an accuser, first-hand competent witness, affidavit, an opportunity for me to be heard through a hearing, credible material fact evidence, or damages presented before the grand jury.

2. The prosecutor does not have authority to interfere with my unalienable rights by perverting my legally filed civil quite title-verified complaints into criminal charges through overextending statutes to include real property, suppressing exculpatory evidence, and misrepresenting other exculpatory evidence based on the grand jury's ignorance of common law, and prosecutorial misconduct fails to establish a justiciable issue to confer subject matter jurisdiction to the trial court or to justify a conviction.

On July 21, 2020, the Ohio Supreme Court declined jurisdiction over the appeal.

---

[4]Petitioner's notice of appeal and memorandum in support of jurisdiction, and the Ohio Supreme Court's Entry declining jurisdiction over the appeal were viewed under Case No. 2020-0688 at https://www.supremecourt.ohio.gov/Clerk/ecms/#/search. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Lets*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

**Judicial Release**

Meanwhile, on July 17, 2018, petitioner filed a motion for judicial release in the trial court. (Doc. 27-3, at PageID 2334). On August 30, 2018, the trial court granted petitioner judicial release, with special conditions. (Doc. 27-5, at PageID 2336). The trial court has since terminated petitioner's community control as successful. (Doc. 27-6).

**Federal Habeas Corpus**

Petitioner commenced the instant habeas corpus action on April 10, 2020, challenging her state-court criminal trial and convictions, as well as her community-release conditions. (Doc. 1).

The Court previously construed the petition to raise claims that: (1) the trial court lacked subject matter jurisdiction over petitioner's underlying criminal matter because petitioner was (a) arrested without a warrant or probable cause, (b) denied a preliminary hearing, and (c) denied adequate notice of the charges at issue; and (2) petitioner's community-release conditions are unconstitutional. (*See* Doc. 21). Petitioner has since clarified her claims. (Doc. 26). As to her claims concerning the subject matter jurisdiction of the trial court, petitioner states:

> The following quote taken directly from my common law writ of habeas corpus petition clearly clarifies my claim:
>
>> "The unconstitutionally vague indictment prima facie failed to agree with the bill of particulars and to establish a justiciable issue to confer subject matter jurisdiction to trial court; Ohio Constitution Article IV, Section 4, "Common pleas courts have original jurisdiction over all justiciable matters". A court lacks jurisdiction where no justiciable issue is presented through proper pleadings, Ligon v. Williams, 264 Ill.App.3d 701, 637 N.E.2d 633 (1st Dist. 1994). Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities, State v. Blankenship, 675 N.E.2d 1303, (Ohio App.9 Dist. 1996). They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." [Elliot v. Piersol, 1 Pet. 328,

> 340, 26 U.S. 328, 340 (1828)], World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)."
>
> My petition addressed my claim that the HAMILTON COUNTY COMMON PLEAS COURT lacked subject-matter jurisdiction as a result of prosecutions' failure to establish a justiciable matter between the alleged grand jury's fatally vague indictment that alleged criminal charges but failed to articulate facts of criminal conduct and the state's bill of particulars that alleged, through a misterm, constitutionally protected conduct. Trial court lacked subject-matter jurisdiction and thus, authority to indict me without probable cause, arrest me without a warrant, try me without due process of law, convict, imprison, or place special probation conditions on me without due process of law (See my Petition and All Previous Pleadings).

(Doc. 26, at PageID 2314-15). Petitioner has also clarified her challenge to the imposed community-release conditions to assert that "the conditions that were unlawfully imposed are interfering with my constitutionally protected rights to petition the courts, enter on to real property, register with any local, state, or federal agencies." (Doc. 26, at PageID 2319).

Respondent has filed a return of writ in opposition to the petition (Doc. 23), to which petitioner has replied (Doc. 24).[5]

## II. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States

---

[5]The parties also filed the following motions: respondent's Motion to Strike Petitioner's Judicial Notice Concerning Petition for Writ of Habeas Corpus, Objection to Respondent's Dismissal, and Motion for Release (Doc. 16); petitioner's Motion to Strike Respondent's Reply in Support of Its Motion to Dismiss and Second Response (Doc. 17); petitioner's Motion and Order to Vacate the Void Judgment, per Respondent's Failure to Comply with this Court's Order (Doc. 20); and petitioner's Objection to Unfiled Documents and Improper Respondent, Motion to Vacate Void Judgment, Motion of Contempt, Order of Release, and Memorandum in Support (Doc. 28). On August 17, 2021, the undersigned recommended that these motions be denied. (Doc. 29). The District Court adopted the recommendation in its entirety on September 2, 2021 (Doc. 34).

Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable. . . .* This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that

when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court

decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

## A. State-Court Criminal Trial and Convictions[6]

In her claims pertaining to her state-court criminal trial and convictions, as clarified, petitioner first contends that the trial court lacked subject matter jurisdiction over her underlying criminal matter because the prosecution failed "to establish a justiciable matter between the alleged grand jury's fatally vague indictment that alleged criminal charges but failed to articulate facts of criminal conduct and the state's bill of particulars that alleged, through a misterm, constitutionally protected conduct." (Doc. 26, at PageID 2315). [7] Petitioner contends that, as a

---

[6]In respondent's return of writ, respondent argues, in part, that petitioner is barred from relief because petitioner failed to exhaust available administrative and state-court remedies. (*See* Doc. 23, at PageID 2297). It appears, however, that petitioner has exhausted her claims, as clarified (*see* Doc. 26, at PageID 2314-15), pertaining to her state-court criminal trial and convictions unrelated to her conditions of release by filing a direct appeal in the Ohio Court of Appeals and seeking review in the Ohio Supreme Court. However, the Court need not determine the exhaustion issue as it pertains to those claims because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

[7]Petitioner asserts that there is no justiciable controversy due to an alleged variance between the indictment, which charged petitioner with theft, and the bill of particulars, which stated that petitioner and her co-defendants "illegally squatted" on the properties in an attempt to illegally steal them from the rightful owners. (*See* Doc. 22-1 (Indictment), at PageID 1955; Doc. 22-1 (Bill of Particulars), at PageID 1969). Petitioner maintains that "[t]he alleged conduct elucidated on the bill of particulars did not establish a justiciable issue or give rise to arrest or conviction." (Doc. 1, at PageID 3). According to petitioner, squatting is not necessarily illegal and adverse possession is a

result of the court's lack of jurisdiction, the court lacked "authority to indict [her] without

probable cause, arrest [her] without a warrant, try [her] without due process of law, convict,

imprison, or place special probation conditions on [her] without due process of law." (Doc. 26,

at PageID 2315).

The Ohio Court of Appeals rejected petitioner's challenge to trial court's exercise of

subject matter jurisdiction as follows:

> {¶60} Finally, the Khamisis argue that both judges ignored their lack of jurisdiction, which was actually the crux of their arguments throughout the proceedings. They fail to understand the nature of subject-matter jurisdiction. Subject-matter jurisdiction involves a court's power to hear a case. *State v. Mbodj*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶10.

> {¶61} Section 4(B), Article IV of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matter and such powers of review of proceedings as may be provided by law." R.C. 2931.03 provides that jurisdiction over all crimes and offenses is vested in the court of common pleas, general division, unless jurisdiction is specifically and exclusively vested in other divisions of the court or in the lower courts. *State ex rel. McMinn v. Whitfield,* 27 Ohio St.3d 4, 5, 500 N.E.2d 875 (1986). Moreover, "[a]bsent a patent and unambiguous lack of jurisdiction, a court with general subject-matter jurisdiction may determine its own jurisdiction." *State ex rel. Brown v. Luebbers*, 137 Ohio St.3d 542, 2013-Ohio-5062, 1 N.E.3d 395 ¶ 12. The court had jurisdiction to hear the case, and the fact that it did not agree with the Khamisis' arguments does not mean that the court lacked jurisdiction.

(Doc. 22-2, at PageID 2284-85).

A federal court may review a state prisoner's habeas petition only on the ground that the

challenged confinement violates the Constitution, laws or treaties of the United States, and not

"on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S.

37, 41 (1984). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of

a federal court to reexamine state-court determinations on state-law questions"). A challenge

concerning a state trial court's jurisdiction is solely a matter of state law and thus is not

---

constitutional right. (*See, e.g.,* Doc. 1, at PageID 2; Doc. 24, at PageID 2305; Doc. 26, at PageID 2315).

cognizable in federal habeas review. *Toler v. McGinnis*, 23 F. App'x 259, 266 (6th Cir. 2001).

"Determination of whether a state court is vested with jurisdiction under state law is a function of

the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.

1976) (per curiam); *see Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Therefore,

petitioner's challenge to the state court's jurisdiction over her criminal case fails to state a

cognizable federal habeas corpus claim.

Furthermore, petitioner's derivative claims concerning her (1) indictment, (2) alleged

arrest without a warrant, and (3) trial do not warrant habeas relief for the reasons below.[8]

First, as to her indictment, petitioner has clarified her claim to assert that the indictment

was "fatally vague" and "failed to articulate facts of criminal conduct." (Doc. 26, at PageID

2315). She also asserts that the bill of particulars "alleged, through a misterm, constitutionally

protected conduct." (Doc. 26, at PageID 2315). The Ohio Court of Appeals rejected these

challenges to the indictment:

> {¶28} In their first assignments of error, the Khamisis contend that the trial court
> committed structural error "by Creating a Fatal Variance Between the Grand Jury's
> Indictment and the Bill of Particulars and Evidence * * *." They argue that the
> indictments failed to give them adequate notice of the alleged criminal conduct with
> which they were charged, that they were not supported by sufficient facts, and that
> they were falsely procured by the prosecutor. These assignments of error are not
> well taken.
>
> {¶29} Under the United States and Ohio Constitutions, an individual accused of a
> felony is entitled to an indictment setting forth the "nature and cause of the
> accusation." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781
> (1985); *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506,
> ¶ 41 (1st Dist.). The government must aver all material facts constituting the
> essential elements of the offense so that the accused has adequate notice and an
> opportunity to defend. *Sellards* at 170, 478 N.E.2d 781; *Lukacs* at ¶ 41. But the
> indictment need not contain a recitation of the evidence supporting the various
> facts. *Lukacs* at ¶ 41; *State v. Gingell*, 7 Ohio App.3d 364, 366, 455 N.E.2d 1066

---

[8]Petitioner's claims relating to the conditions of her judicial release are considered in Part B below.

(1st Dist. 1982). Generally, the requirements of an indictment may be met by reciting the language of the criminal statute. *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d 781 (2000).

{¶30} In this case, the indictments tracked the language of the applicable statutes. Therefore, the Khamisis can demonstrate no error. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 26; *State v. Murphy*, 65 Ohio St.3d 554, 583, 605 N.E.2d 884 (1992).

{¶31} Further, each of the Khamisis was supplied with a bill of particulars. The accused can obtain more specific details by requesting a bill of particulars as provided in Crim.R. 7(E). But the bill of particulars need not provide the accused with specifications of the evidence or serve as a substitute for discovery. *Sellards* at 171, 478 N.E.2d 781; *Lukacs* at ¶ 43; *Gingell* at 367, 455 N.E.2d 1066. The indictments and the bills of particulars together were sufficient to apprise the Khamisis of the charges against them. Therefore, they did not give rise to any error, much less structural error. *See State v. Roberts*, 1st Dist. Hamilton Nos. C-040575 and C-050005, 2005-Ohio-4848, 2005 WL 2249106, ¶ 9, *reversed on other grounds*, *In re Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174.

{¶32} The Khamisis claimed throughout trial that they had no notice of the offenses with which they were charged. The record shows that they were provided with discovery, and that their claims that they had no notice were trial tactics. They were well aware of the factual basis of the charges against them. They took great offense that the bill of particulars described them as "squatters," and they argue that squatting is not necessarily illegal. The purpose of the bill of particulars is to provide notice. The use of the word is not improper, but even if it were, its use did not affect the validity of the notice.

(Doc. 22-2, at PageID 2274-76).

Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts. As an initial matter, to the extent that petitioner challenges the manner in which she was charged, her claim does not trigger federal constitutional concerns subject to review in this federal habeas proceeding. Indeed, it is well-settled that there is not even a federal constitutional right to an indictment in state criminal proceedings. *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731

15

F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . . It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977); *Fears v. Miller*, No. 1:09cv698, 2009 WL 6315341, at *9 (N.D. Ohio Dec. 1, 2009) (Report & Recommendation), *adopted,* 2010 WL 1258096 (N.D. Ohio Mar. 30, 2010); *Harsh v. Warden, Chillicothe Corr. Inst.*, No. 1:08cv433, 2009 WL 3378246, at *1, *20 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.). As long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338; *see also Williams v. Haviland,* 467 F.3d 527, 535 (6th Cir. 2006).

In this case, the indictment and bill of particulars were sufficient to place petitioner on notice that she was charged with committing the offenses of tampering with records, theft, and unauthorized use of property with respect to Terrence Davis's property at 4945 Paddock Road. As noted by the Ohio Court of Appeals, the indictment tracked the language of the applicable statutes, specified the essential elements of the charges against her, and petitioner was provided with additional notice of the charges against her in the bill of particulars. (*See* Doc. 22-1 (Indictment), at PageID 1954-55; Doc. 22-1 (Bill of Particulars), at PageID 1969). The bill of particulars specified the dates on which petitioner and her co-defendants were alleged to have illegally occupied the properties, the addresses of the properties, and the specific fraudulent documents filed with the governmental authorities that served as the basis for the charges brought against them. (*See* Doc. 22-1, at PageID 1969). Petitioner had sufficient notice to adequately prepare a defense to the allegations. The Ohio Court of Appeals therefore reasonably determined that petitioner was provided with constitutionally adequate notice of the charges

against her.

In a related claim, petitioner also contends that the state lacked "authority to indict [her] without probable cause[.]"  (Doc. 26, at PageID 2315).  The Court understands this claim to challenge the sufficiency of the evidence presented to the grand jury.  In rejecting this claim, the Ohio Court of Appeals relied on state and federal law, explaining:

> {¶33} The Khamisis also argue that the indictments were not supported by sufficient and credible evidence.  The grand jury, in inquiring into crimes and offenses returning indictments, does not exercise a judicial function.  An indictment and subsequent proceedings based on that indictment are not rendered invalid on the ground that illegal and incompetent testimony was heard by the grand jury. *Villasino v. Maxwell*, 174 Ohio St. 483, 484-485, 190 N.E.2d 265 (1963); *State v. Cunningham*, 1st Dist. Warren No. 54, 1975 WL 181079, *4 (Dec. 29, 1975); *Wickline v. Alvis*, 103 Ohio App. 1, 9-10, 144 N.E.2d 207 (10th Dist. 1957).

> {¶34} Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Calandra*, 414 U.S. 338, 344-345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *State v. Blalock*, 8th Dist. Cuyahoga Nos. 80419 and 80420, 2002-Ohio-4580, 2002 WL 2027520, ¶ 24.  "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for the trial of the charge on the merits." *Villasino* at 485, 190 N.E.2d 265; *Blalock* at ¶ 24.

> {¶35} In this case, the indictments were valid on their faces.  Therefore, the Khamisis cannot challenge the evidence supporting the indictments.  It appears they are actually trying to challenge the weight and sufficiency of the evidence at trial, but they have not raised assignments of error to that effect.  Because they failed to raise assignments of error challenging the weight and sufficiency of the evidence, we need not address those issues. *See State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 43 (1st Dist.).

(Doc. 22-2, at PageID 2276-77).

The Ohio Court of Appeal's decision is not an unreasonable application of clearly established federal law.  The state court relied on relevant Supreme Court precedent, *United States v. Calandra*, which provides:

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered.  Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence[.]

*Calandra*, 414 U.S. at 344-45.  Because the Ohio Court of Appeals found that petitioner's indictment was facially valid under Ohio law, *see* Doc. 22-2, at PageID 2276, petitioner has no basis for a constitutional challenge to the indictment, and this claim should be denied.  *See Higgason v. Stephens*, 288 F.3d 868, 876-77 (6th Cir. 2002) ("Plaintiff's due process allegation comes down to a claim he was indicted without probable cause. . . .  Therefore, because Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim.") (citing *Ex Parte United States*, 287 U.S. 241, 250 (1932)).

Second, as to petitioner's claim that she was arrested without a warrant (Doc. 26, at PageID 2315), a federal court on habeas review generally will not reach the merits of a Fourth Amendment claim under the rule of *Stone v. Powell*, 428 U.S. 465 (1976).[9]  Petitioner's claim

---

[9]The Supreme Court held in *Stone v. Powell*, that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494–95.  The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  Under that inquiry, the federal habeas corpus court must determine (1) whether the state has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010).  Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry.  *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts.  *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003), *rev'd on other grounds*, 606 F.3d 867 (6th Cir. 2010), (citing *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).

that she was arrested without a warrant, and any additional claim that she was arrested without probable cause (*see* Doc. 26, at PageID 2317 ("I claimed that . . . no probable cause existed"); *see also* Doc. 1, at PageID 2 (alleging that prosecutors "lacked probable cause to have [her] arrested")), should not be addressed on the merits because petitioner has failed to establish that her ability to raise a Fourth Amendment challenge to her arrest was frustrated by a failure of the State's procedural mechanism. *See Riley*, 674 F.2d at 526; *see also Machacek,* 213 F.3d at 952. Rather, the trial court's docket record shows that petitioner filed several pre-trial submissions and motions, including a "notice of void judgment," an "order to dismiss void order," and "a notice of unlawful procedures." (*See* Doc. 27-1, at PageID 2327, 2329). Petitioner has not shown that she lacked the opportunity to present any Fourth Amendment violations she perceived.

Notably, the undersigned anticipates that petitioner may assert that her opportunity to litigate a Fourth Amendment claim was not full and fair due to alleged biases on the part of the initial and visiting trial judges (s*ee* Doc. 1, at PageID 3-4) and certain filing restrictions put in place by the initial trial judge (*see* Doc. 24, at PageID 2308; *see also* Doc. 26, at PageID 2317-18). However, as discussed below in considering petitioner's claims that she was denied the right to present a defense, the Ohio Court of Appeals reasonably rejected both claims.

In any event, even if the Court were to consider petitioner's Fourth Amendment claims on the merits, relief should be denied. To the extent that petitioner claims that she was arrested without a warrant, the state court trial record indicates that a warrant was issued prior to petitioner's arrest. (*See* Doc. 27-1, at PageID 2328-29). To the extent that petitioner maintains that she was arrested without probable cause, her indictment, which the Ohio Court of Appeals determined to be facially fair under Ohio law (*see* Doc. 22-2, at PageID 2276), precludes such a

claim.  *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) ("[T]he Court has held that an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry.") (citing *Ex parte United States*, 287 U.S. at 250).

Finally, petitioner raises a number of due process claims regarding her trial.  To the extent that petitioner claims that she was denied a preliminary hearing (*see* Doc. 26, at PageID 2317-18), such a claim is not cognizable on federal habeas review.  There is no federal constitutional right to a preliminary hearing.  *See Gerstein*, 420 U.S. at 123, 125 n.26; *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).  *See also Patterson v. Gray*, Case No. 20-3872, 2020 WL 6778410 at *2 (6th Cir. Nov. 9, 2020) (upholding the district court's conclusion that petitioner's claim that he was denied a preliminary hearing in violation of his right to due process failed to state a cognizable claim on federal habeas review); *Chappell v. Morgan*, Case No. 17-3224, 2017 WL 3973960, at *2 (6th Cir. Aug. 16, 2017) ("we have held in this circuit that there is no constitutional right to a preliminary hearing") (citing *Maglaya v. Buchkoe*, 515 F.2d 265, 268 (6th Cir. 1975)).

Furthermore, to the extent that petitioner claims that the trial court set excessive bail and denied her right to present a defense[10] through imposing a requirement that parties seek leave of court before filing (*see* Doc. 26, at PageID 2317), such claims also do not warrant habeas corpus relief.  As an initial matter, petitioner's excessive-bail claim is moot.  *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982) ("[W]e find that Hunt's constitutional claim to pretrial bail became moot following his convictions in state court . . . .").  Next, the Ohio Court of Appeals reasonably

---

[10]Petitioner also claims that she was denied the right to self-represent.  (Doc. 26, at PageID 2317).  The Ohio Court of Appeals rejected this claim.  (Doc. 22-2, at PageID 2277-82).  Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts.

rejected petitioner's claim that filing restrictions interfered with her right to present a defense.

The state appellate court found:

> {¶43} One of the Khamisis' complaints involves an order the trial court journalized early in the proceedings. The court ordered the clerk of courts to remove the case completely from display on the clerk's website. It also stated that all parties had to seek leave of court before obtaining copies of any filings in the case. The record shows that the court made that order because the Khamisis had attempted to evade arrest, and they were not all arrested at the same time.

> {¶44} The case was later assigned to a visiting judge. When the Khamisis argued that the order prevented them from defending themselves, the court said that "my interpretation was that some documents were being attempted to be filed in this case while one or more of you had an outstanding warrant; that was the rationale that I thought for the issuance of that order." The court agreed to rescind the order, which was vacated less than four months after it was journalized.

> {¶45} The court also offered to grant a continuance. The Khamisis initially refused and argued about the alleged lack of notice and jurisdiction. After a lot of back-and-forth, the court granted a continuance. In fact, the court went to great lengths to ensure that the Khamisis received transcripts of the various hearings and had access to the internet at the jail.

> Thus, they were not prevented from preparing a defense.

(Doc. 22-2, at PageID 2279-80). Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts. *Cf., e.g., Just. v. Koskinen*, 109 F.Supp.3d 142, 144 (D.D.C. 2015), *aff'd*, 672 F. App'x 6 (D.C. Cir. 2016) ("Here, requiring compliance with the Vexatious Litigant Order will not deprive Plaintiff of access to the courts; he remains free, with leave of the court, to pursue any non-frivolous claim in accordance with the terms of the Vexatious Litigant Order, the Federal Rules of Civil Procedure, and the court's local rules.").

Although petitioner asserts that she was denied the right "to file petitions such as, motions affidavits challenging the court's lack of subject-matter jurisdiction, requesting dismissal of the void charges, requesting dismissal of the non-impartial judge, requesting

probable cause and evidentiary hearings, change of venue, motions to quash, etc." (Doc. 26, at PageID 2318), petitioner in fact filed, as set forth above, a "notice of void judgment," an "order to dismiss void order," and "a notice of unlawful procedures."  (Doc. 27-1, at PageID 2327, 2329).  Further, petitioner does not identify any substantive defense that she was prevented from raising.  Rather, she identifies "[t]he trial court's lack of subject-matter jurisdiction as it relates to prosecutions' failure to present a justiciable issue" as the "gravamen of [her] claim."  (Doc. 24, at PageID 2305).  The state courts squarely addressed, and rejected, this claim.  (*See* Doc. 22-2, at PageID 2276, 2284-85 (rejecting petitioner and her codefendants' challenge to the trial court's jurisdiction and claim that the use of the term "squatters" in the Bill of Particulars prevented the defendants from having notice of the charges against them)).  Further, the Ohio Court of Appeals went on to find that petitioner and her codefendants failed to establish adverse possession.  (Doc. 22-2, at PageID 2288-89 ("The Khamisis, by their own admission, had not been in possession of any of the properties for 21 years.  Therefore, an instruction of adverse possession was not supported by the evidence.")).

Similarly, to the extent that petitioner asserts that her access to the library was restricted (*see* Doc. 26, at PageID 2317), the Supreme Court has declined to find a clearly established right for a self-represented defendant to access a law library.  *See Kane v. Espitia,* 546 U.S. 9, 10 (2006).

Additionally, to the extent that petitioner asserts that the initial and visiting trial judges were biased against her (*see* Doc. 1, at PageID 4, asserting that the trial court had a "personal bias and prejudices")), the Ohio Court of Appeals also reasonably rejected this claim:

> {¶55}  . . . A trial before a judge who is not impartial results in structural error that would require reversal without a harmless-error analysis. *State v. Sanders*, 92 Ohio St.3d 245, 278, 750 N.E.2d 90 (2001); *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 82 (1st Dist.).  The Ohio Supreme Court has described judicial bias as "a

hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and facts." *Buck* at ¶ 83, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶56} A trial court is presumed to be fair and impartial. *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606, 546 N.E.2d 929 (1989); *Gandy* at ¶ 23. The Khamisis have failed to overcome this presumption relating to the original trial judge or the visiting judge. The judges' failure to provide the relief to which the Khamisis believe they were entitled does not establish actual bias. *See State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 40. Further, the fact that the Khamisis had filed litigation against the judges or that the judges had presided over the civil quiet-title actions, without more, does not establish bias. *See In re Disqualification of Pokorny*, 135 Ohio St.3d 1268, 2013-Ohio-915, 986 N.E.2d 993, ¶ 4; *In re Disqualification of Bryant*, 117 Ohio St.3d 1251, 2006-Ohio-7227, 885 N.E.2d 246, ¶ 4.

{¶57} The Khamisis argue that both judges ignored their motions. Both judges simply refused to reconsider the same motions they had already ruled on that the Khamisis continued to raise time and again. When a court fails to rule on a pending motion, we presume that the court elected to overrule it. *State v. Smith*, 1st Dist. Hamilton Nos. C-180439 and C-180604, 2019-Ohio-5350, 2019 WL 7206325, ¶ 13.

{¶58} Next, the Khamisis contend that the visiting judge imposed his own morality upon the proceedings. The remarks about which they complain occurred at the sentencing hearing where the judge asked how they could morally justify taking other people's property. This is a proper consideration at sentencing. *See State v. Arnett*, 88 Ohio St.3d 208, 221-222, 724 N.E.2d 793 (2000); *State v. Brown*, 11th Dist. Geauga No. 2003-G-2504, 2004-Ohio-1843, 2004 WL 764589, ¶ 35; *State v. Golson*, 2d Dist. Montgomery No. 17707, 2001 WL 227372, *7 (Mar. 9, 2001).

{¶59} The Khamisis argue that even though the visiting judge tried the case, they were prejudiced because the bailiff was the original trial judge's sister, which they did not learn until after trial. Much of this argument involves matters outside the record on appeal, which we cannot consider. *See State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978); *State v. Dieterle*, 1st Dist. Hamilton No. C-070796, 2009-Ohio-1888, 2009 WL 1099481, ¶ 49. Nothing in the record shows that the bailiff influenced the jury or acted in a way to deny the Khamisis a fair trial.

(Doc. 22-2, at PageID 2283-84).

23

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, . . ., before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley,* 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted). "The inquiry [for judicial bias] is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881 (2009). However, a judge is presumed to be impartial, and a party that seeks to establish bias bears the burden of overcoming that presumption. *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013). Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," but instead, "[a]lmost invariably are proper grounds for appeal, not recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Likewise, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

Petitioner asserts bias based on allegations that: (1) the trial court judges "had constructive knowledge of the successful civil suit litigation[11] regarding the subject properties," (2) the trial court judges failed "to factually determine jurisdiction or to dismiss the fraudulent charges," and (3) petitioner had "filed several habeas' with trial court that were ignored and dismissed prior to filing with the Ohio Appeals Court." (Doc. 1, at PageID 3-4). However, a

---

[11]Petitioner describes the previous civil litigation involving the properties as "successful." However, petitioner has not identified any prior civil action brought by her or her codefendants in which they were successful in obtaining ownership of any of the subject properties. The Ohio Court of Appeals' decision notes the dismissal of petitioner's quiet-title action, as well as other unsuccessful attempts by her codefendants to exert an interest over the subject properties. (*See* Doc. 22-2, at PageID 2267-73).

judge's presiding over earlier proceedings and legal rulings are insufficient to raise an inference of bias. *Liteky*, 510 U.S. at 555. The Ohio Court of Appeals reasonably determined that petitioner failed overcome the presumption of impartiality. (*See* Doc. 22-2, at PageID 2283-84). Petitioner's bias claim therefore does not warrant habeas relief and should be denied.

Finally, to the extent that petitioner otherwise generally asserts that she was denied due process at trial, the conclusory nature of her claims preclude relief. *See, e.g.*, *Velez v. Miller*, No. 3:15-cv-785, 2017 WL 1029106, at \*2 (N.D. Ohio Mar. 17, 2017).[12]

Accordingly, in sum, petitioner is not entitled to federal habeas relief based on her claims pertaining to her state-court criminal trial and convictions.

## B. Community-Release Conditions

As previously noted, petitioner also challenges the constitutionality of the now terminated (*see* Doc. 27-6) special conditions set forth in the trial court's entry granting petitioner judicial release. (Doc. 1, at PageID 1-2; *see also* Doc. 26, at PageID 2319).

"[M]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir.

---

[12]Petitioner also asserts that she is seeking to vacate judgments that are interfering with her right to her son. (Doc. 1, at PageID 8). It is well settled, however, that federal courts generally lack jurisdiction over domestic relations matters 'even when those questions are presented in the guise of a federal question." *See Robinson v. Michigan*, No. 1:09cv564, 2009 WL 3011225, at \*3 (W.D. Mich. Sept. 16, 2009) (and numerous cases cited therein); *see also Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010) ("[u]nder the principles of comity and deference to state expertise in the field of domestic relations," and in accordance with the court's "consistent policy," the Sixth Circuit "decline[d] to exercise jurisdiction" over claims that constituted collateral attacks on state-court judgments pertaining to child custody); *Lee v. Johnson-Wharton*, No. 1:14cv868, 2014 WL 7015178, at \*4 (S.D. Ohio Dec. 11, 2014) (Dlott, J.; Litkovitz, M.J.) (relying on *Stephens* and *Sefa v. Kentucky*, 510 F. App'x 435, 437-38 (6th Cir. 2013), in holding that the district court lacked jurisdiction to consider claims couched in terms of a civil rights action, which essentially amounted to a collateral attack of a state-court judgment terminating the plaintiff's parental rights). The *Rooker-Feldman* doctrine, which generally prohibits federal district courts from entertaining appeals from cases already litigated in state court, also is applicable to the extent that the petitioner is complaining about state court rulings issued against her before the instant action commenced and is inviting this Court to review and reject those determinations. *See Lee, supra*, 2014 WL 7015178, at \*3 (holding that the district court also lacked jurisdiction under the *Rooker-Feldman* doctrine to reverse the state court's decision terminating the plaintiff's parental rights).

1986).[13]  As mootness strikes "at the very heart of federal subject matter jurisdiction," the mootness of a habeas petition can be raised sua sponte by the federal court, even if the issue is not addressed by the parties.  *Medberry v. Crosby,* 351 F.3d 1049, 1054 n. 3 (11th Cir. 2003). Because petitioner is no longer subject to the community release conditions at issue in her habeas corpus petition, the Court ordered petitioner on August 17, 2021, to show cause within thirty (30) days of the date of the Order why her claims pertaining to the constitutionality of the special conditions of her since successfully terminated judicial release should not be dismissed without prejudice as moot.

More than thirty days have passed since the Court's Order and, despite being granted an extension of time, petitioner has failed to show any basis for the Court to conclude that her terminated community release conditions present a live controversy for the Court.  *See, e.g., Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter.") (quoting *North Carolina v. Rice*, 404 U.S. 244, 248 (1971)).

The Court should therefore dismiss petitioner's claims concerning the constitutionality of her community release conditions without prejudice as moot.

Accordingly, in sum, the undersigned concludes that petitioner's claims pertaining to her state court trial and conviction should be denied and her claims regarding her community-release conditions should be dismissed without prejudice as moot.

---

[13]"Although both mootness and the 'in custody' requirement of § 2254(d) relate to federal subject-matter jurisdiction they are analytically distinct issues requiring different treatment. . . . Jurisdiction is a matter of satisfying the statutory 'in custody' requirement, which is determined at filing, whereas mootness is a question of whether there is any relief the court can grant once it has determined that it indeed has jurisdiction." *Brooks v. Superior Ct. of Lake Cty.,* No. C 94-0805 BAC, 1994 WL 225037, at *2 (N.D. Cal. May 6, 1994) (internal citations omitted).

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's claims pertaining to her state court trial and convictions be **DENIED WITH PREJUDICE** and her claims regarding her community-release conditions be **DISMISSED WITHOUT PREJUDICE** as moot.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KAIA KHAMISI,                                    Case No. 1:20-cv-286
      Petitioner,

                                    Black, J.
      vs.                                       Litkovitz, M.J.

SHERIFF JIM NEIL,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).